# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3807

_____

Macheca Transport Company,
doing business as Gateway Cold
Storage; David Macheca;
Starlin Macheca,

              Appellants,

v.

Philadelphia Indemnity
Insurance Company,

              Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: April 21, 2006
Filed: September 22, 2006 **(Corrected 10/24/06)**

_____

Before LOKEN, Chief Judge, BOWMAN and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Macheca Transport Company (Macheca) appeals the district court's grant of summary judgment in favor of Philadelphia Indemnity Insurance Company (Philadelphia) asserting the district court addressed only one of two arguments Macheca made seeking coverage under an insurance policy issued by Philadelphia. Macheca also appeals the district court's determination the term "collapse" was used

unambiguously in the policy.  Lastly, Macheca appeals the district court's grant of a motion to disqualify its counsel.  We reverse and remand for further proceedings.

I

Macheca operates a refrigerated warehouse in St. Louis, Missouri.  Macheca purchased an all-risk insurance policy from Philadelphia which provided insurance coverage for damage to the warehouse and its contents subject to certain exclusions and limitations.  The relevant portions of the policy provide as follows:

Covered Causes of Loss

Covered Causes of Loss means Risks of Direct Physical Loss unless the "loss" is:
1. Excluded in Section B., Exclusions; or
2. Limited in Section C., Limitations; that follow.

Exclusions

. . .

2. We will not pay for "loss" caused by or resulting from any of the following.

. . .

i. Collapse, except as provided below in the Additional Coverage for Collapse. But if "loss" by any of the Covered Causes of Loss results at the described premises, we will pay for the resulting "loss".

j. Discharge, dispersal, seepage, migration, release or escape of "pollutants". But we will pay for resulting "loss" to Covered Property when the discharge, dispersal, seepage, migration, release or escape of "pollutants" is caused by any of the "specified causes of loss".

-2-

. . .

Limitations

1. We will not pay for "loss" to:

. . .

c. The interior of any "buildings", or to personal property in "buildings", caused by or resulting from rain, snow, sleet, ice, sand or dust whether driven by wind or not, unless:

(1) The "buildings" first sustain damage by a Covered Cause of Loss to their roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The "loss" is caused by or results from thawing of snow, sleet or ice on the "buildings".

. . .

Additional Coverage – Collapse

We will pay for "loss" caused by or resulting from risks of direct physical "loss" involving collapse of "buildings" or any part of "buildings" caused only by one or more of the following:

1. The "specified causes of loss" or breakage of building glass, all only insured against in this form;

. . .

F. Definitions

. . .

8. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

. . .

11. "Specified Causes of Loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

J.A. at 195-201.

On or about November 18, 2001, pipe which was part of the warehouse refrigeration system ruptured, fell, and leaked ammonia causing damage to the warehouse and its contents. This occurred when part of the pipe's support system detached from the ceiling due to the weight of ice accumulating on the pipe. Macheca notified Philadelphia of the loss on November 26, 2001, and made a claim for coverage under the policy. An engineer retained by Philadelphia inspected the warehouse on January 20, 2002. By letter, dated February 13, 2002, Philadelphia denied Macheca's claim stating a "covered cause of loss had not occurred." The letter also stated a copy of the engineer's report was attached.

On April 8, 2003, Mr. Horvath, counsel for Macheca, wrote to Philadelphia stating Macheca either had not received the engineer's report or had misplaced it, and he asked that another copy be sent. He repeated this request in letters to Philadelphia dated April 8, April 29, June 10, and September 5, 2003, and in a phone conversation on May 23, 2003. On October 21, 2003, Mr. Horvath acknowledged receipt of a copy of the engineer's report.

On December 23, 2003, Macheca filed suit against Philadelphia in Missouri state court for breach of insurance contract and vexatious refusal to pay. Philadelphia removed the case to federal court. In federal court, Macheca filed a motion for partial summary judgment on the breach of contract issue. In its memorandum in support of partial summary judgment, Macheca advanced and developed the same two theories for coverage it advanced in a letter sent to Philadelphia on June 10, 2003. Namely, that the loss was covered under (1) the exception to certain exclusions for the "specified causes of loss" for "weight of ice," and (2) the additional coverage Macheca purchased for "collapse." Philadelphia filed a cross motion for summary judgment contending Macheca's loss was not covered by the policy. Philadelphia also filed a motion to disqualify Mr. Horvath as Macheca's counsel under Rule 4-3.7 of the Missouri Supreme Court Rules of Professional Conduct, claiming he would be a necessary witness for Macheca's vexatious refusal to pay claim.[1]

The district court granted the motion to disqualify Mr. Horvath as Macheca's counsel, concluding his communications with Philadelphia were relevant in determining whether the refusal to pay Macheca's claim was willful and without reasonable cause at the time the refusal was made. The district court also granted

---

[1]Rule 4-3.7 provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Mo. S. Ct. R. 4-3.7.

Philadelphia's motion for summary judgment and denied Macheca's motion for partial summary judgment, but failed to address Macheca's claim the loss was covered under the exception to certain exclusions for the "specified causes of loss" for "weight of ice." Rather, the district court addressed Philadelphia's contention the policy limited coverage for "loss" to the "interior of any building or to personal property in the building caused by or resulting from . . . ice," (referring to this provision as an exclusion rather than a limitation on coverage). The district court interpreted the limitation in Macheca's favor, concluding the limitation referred to "ice" as an element of the weather, because it was within a list of items solely related to the weather. As such, Philadelphia could not limit coverage under this provision of the policy because the ice at issue was not weather related.

The district court then addressed Macheca's contention the collapse of the ammonia pipe was covered under the "additional coverage - collapse" provision of the policy. Referring to Missouri Court of Appeals' cases which recognize a collapse only when there is an entire "falling or reduction [of a structure] to a flattened form or rubble," the district court determined the term was not ambiguous, and the pipes had not collapsed. See Williams v. State Farm and Cas. Co., 514 S.W.2d 856, 859 (Mo. Ct. App. 1974); Eagelstein v. Pac. Nat'l Fire Ins. Co., 377 S.W.2d 540, 544 (Mo. Ct. App. 1965).

On September 26, 2005, Macheca filed a motion for reconsideration of the district court's order, noting the court failed to address its primary argument that the loss was covered under the exception to certain exclusions for the "specified causes of loss" for "weight of ice." Macheca called the court's attention to the argument in its original memorandum in support of partial summary judgment, specifically stating "[t]his coverage argument is also a completely separate basis for coverage from the 'additional coverage-collapse' argument on which This Court's judgment is based." On September 29, 2005, the district court denied the motion for reconsideration without comment.

Macheca filed a timely appeal of the district court's order granting Philadelphia's motion for summary judgment and the order granting the motion to disqualify Mr. Horvath as Macheca's counsel.

II

We review the district court's grant of summary judgment de novo, <u>Dayton Dev. Co. v. Gilman Fin. Servs., Inc.</u>, 419 F.3d 852, 855 (8th Cir. 2005), as well as its interpretation of the terms of an insurance policy. <u>Am. Simmental Ass'n v. Coregis Ins. Co.</u>, 282 F.3d 582, 586 (8th Cir. 2002).

Macheca argues the district court erroneously granted summary judgment in favor of Philadelphia without considering its argument for coverage under the exception to certain exclusions for the "specified causes of loss" for "weight of ice." Philadelphia contends Macheca only claimed coverage under the "additional coverage - collapse" provision of the policy, and during the summary judgment proceedings "recast" its claim by making a second claim implicating coverage for a loss due to the weight of snow and ice under the "specified causes of loss" provision of the policy. Philadelphia further argues this is an attempt by Macheca "to expand its basis of recovery beyond those previously asserted in its Petition [Complaint] [and] should not be condoned." We disagree.

Macheca clearly made a claim in the district court under the exception to certain exclusions for the "specified causes of loss" for "weight of ice." Macheca's Petition specifically referred to the "Specified Causes of Loss," including coverage for "weight of snow, ice or sleet." Macheca's Petition stated "an ammonia leak occurred in . . . the Subject Building" and "[t]he ammonia pipe collapsed as a result of the weight of ice on the pipe . . .." The parties do not dispute ammonia is a "pollutant" under the terms of the policy, and the policy covers property loss "when the discharge, dispersal, seepage, migration, release or escape of 'pollutants' is caused by any of the

-7-

'specified causes of loss.'" In addition, attached to Macheca's Petition was the letter it sent to Philadelphia on June 10, 2003, which addressed two theories for coverage under (1) the exception to certain exclusions for the "specified causes of loss" for "weight of ice," and (2) the additional coverage Macheca purchased for "collapse." In its memorandum in support of partial summary judgment, Macheca advanced and further developed the same two theories for coverage it addressed in its letter of June 10, 2003.

The essential function of Macheca's Petition was to put Philadelphia on notice of the nature and basis of its claim, and to give Philadelphia a general indication of the type of litigation involved. Redland Ins. Co. v. Shelter Gen. Ins. Cos., 121 F.3d 443, 446 (8th Cir. 1997). Well pleaded facts, not theories of recovery, state a cause of action and put a party on notice. Econ. Hous. Co. v. Cont'l Forest Prods., Inc., 757 F.2d 200, 203 (8th Cir. 1985). Macheca's Petition clearly set forth sufficient facts regarding the discharge of ammonia caused by the weight of ice to put Philadelphia on notice that coverage may be triggered by the exceptions to the policy's exclusions for specified causes of loss.

Philadelphia further contends the district court disposed of Macheca's "weight of ice" claim because it addressed the meaning of the term "ice" in the limitations provision of the policy. The district court determined "ice" as used in the coverage limitation referred only to ice as an element of the weather. Philadelphia contends the district court's analysis necessarily means the term "ice" as used in the "specified causes of loss" provision is also limited to ice as an element of the weather, and thus a loss resulting from ice generated by Macheca's refrigeration system would be excluded. We disagree.

Philadelphia's argument runs counter to well-accepted principles of insurance law. In addressing a limitation on coverage, the district court appropriately construed the term "ice" against the insurer. See Brugioni v. Md. Cas. Co., 382 S.W.2d 707,

710-11 (Mo. 1964) ("[A]n insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer."). Philadelphia contends the same narrow construction should be construed against Macheca when used in an exception to an exclusion. But in that context, the term is again construed against the insurer, not the insured. See Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co., 23 S.W.3d 874, 877 n.1 (Mo. Ct. App. 2000) ("With regard to construction of an insurance contract, an insurer claiming applicability of an exclusion clause has the duty to prove application, and such clauses are strictly construed against the insurer."). If there is any ambiguity in the policy, it inures to the benefit of the insured, not the insurer. See, e.g., Oak River Ins. Co. v. Truitt, 390 F.3d 554, 558 (8th Cir. 2004) (citing Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993)).

As a consequence, the district court's analysis of the coverage limitation provision did not dispose of Macheca's "weight of ice" claim, because that claim turns on the analysis of an exception to an exclusion. For coverage purposes, the term "ice" may have a different meaning when used in that context. Cf. Cicciarella v. Amica Mut. Ins. Co., 66 F.3d 764, 770 (5th Cir. 1995) (noting, for insurance purposes, the same term can have different meanings "depending on the context and usage"); see also Shell Oil Co. v. Iowa Dept. of Revenue, 488 U.S. 19, 25 (1988) ("[T]he meaning of words depends on their context."); United States v. Consol. Edison Co. of New York, Inc., 366 U.S. 380, 391 (1961) (indicating a particular word "may have many meanings depending on the sense and context in which it is used").

Because the district court did not analyze the policy provisions upon which Macheca's "weight of ice" claim turns, we remand this case. See Younts v. Fremont County, Iowa, 370 F.3d 748, 754 (8th Cir. 2004) (remanding on appeal from a grant

of summary judgment when the district court failed to address a claim adequately brought before it). "If we addressed [Macheca's] argument on this issue on appeal without giving the district court the opportunity to review it, we would essentially be usurping the district court's role on summary judgment, which we have no desire to do." Id. Ultimately, we express no opinion on the merits of Macheca's claim for coverage, or on the interpretation of the term "ice" in the "specified causes of loss" provision of the policy, leaving that for the district court.[2]

III

The grant of a motion to disqualify an attorney as trial counsel is reviewed for an abuse of discretion. United States v. Poe, 428 F.3d 1119, 1123 (8th Cir. 2005).

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984).

"Because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to particularly strict scrutiny.'" Harker v. Commissioner, 82 F.3d 806, 808 (8th Cir. 1996) (quoting Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985)). "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be

---

[2]Since remand is necessary on one of Macheca's two claims, we decline to consider the "collapse" issue. Macheca is free to ask the district court to reconsider the "collapse" issue in light of the additional authority cited by Macheca on appeal.

imposed only when absolutely necessary." Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp., 690 F. Supp. 607, 613 (S.D. Ohio 1988) (citing Melamed v. ITT Cont'l Banking Co., 592 F.2d 290, 293 (6th Cir. 1979)).

Macheca argues the district court erroneously granted Philadelphia's motion to disqualify its counsel because Philadelphia failed to identify any relevant contested issues requiring Mr. Horvath's testimony at trial. Macheca further contends it would not call Mr. Horvath to testify. Based upon conflicting representations of the content of written and oral communications, Philadelphia argues it has identified relevant contested issues requiring Mr. Horvath's testimony. We disagree.

Rule 4-3.7 of the Missouri Supreme Court Rules of Professional Conduct has been interpreted to mean an attorney is a "necessary witness" only if "there are things to which he will be the only one available to testify." State ex rel. Wallace v. Munton, 989 S.W.2d 641, 646 (Mo. Ct. App. 1999) (citing State v. Werneke, 958 S.W. 2d 314, 321 (Mo. Ct. App. 1997); State v. Mason, 862 S.W.2d 519, 521 (Mo. Ct. App. 1993)).

The district court disqualified Mr. Horvath as Macheca's counsel after concluding his "communications with [Philadelphia] are relevant to determining whether defendant's refusal to pay plaintiffs' claim was willful and without reasonable cause." Add. at 5. Testimony may be relevant and even highly useful, but still not strictly necessary. Blanket allegations that an attorney's testimony is relevant to a party's claim is an insufficient basis upon which to discern whether the attorney "will truly be a 'necessary witness' in the sense that there are things to which he will be the only one available to testify." Munton, 989 S.W.2d at 646. In the district court, and on appeal, Philadelphia not only failed to identify the things to which Mr. Horvath would be the only one available to testify, but also failed to identify whether anyone would even call him as a witness. Macheca has expressly stated it does not intend to call Mr. Horvath as a witness to present its vexatious refusal to pay claim. See Banque

-11-

Arabe, 690 F. Supp. at 613-14 (finding disqualification inappropriate where plaintiffs made an informed decision to forego calling their attorney as a witness).

By considering only whether Mr. Horvath's testimony was relevant, and failing to consider whether Mr. Horvath was the only witness available to testify in support of Macheca's claim, the district court abused its discretion when it disqualified Mr. Horvath as Macheca's counsel.

## IV

For the reasons discussed, we reverse and remand for further proceedings.

_____