# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2385

_____

Robert Droste; Claudia Droste,     *

             *

       Appellants,         *

             *    Appeal from the United States

     v.                *    District Court for the

             *    Eastern District of Missouri.

Douglas Julien,           *

             *

       Appellee.          *

_____

Submitted: January 9, 2007
Filed: February 28, 2007

_____

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

This is a dispute between homeowners, Robert and Claudia Droste, and an architect, Douglas Julien, over allegedly faulty building plans and other services Julien provided regarding the construction of a home. After the district court[1] dismissed some of their claims and disqualified their lawyer, the Drostes voluntarily dismissed their remaining claim with prejudice in order to appeal several of the district court's rulings. We affirm.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

I

Robert and Claudia Droste owned a lot located in the Woodcliffe Estates subdivision in Alton, Illinois. The subdivision is limited to five lot owners. The Drostes hired Dennis Sharp to prepare house plans for the construction of a single family home on their lot. Sharp prepared such plans in November 2000. When the Drostes submitted the plans to the subdivision for approval, three lot owners refused approval because the house was not set back from the street as far as it could be, and the front of the house faced north potentially making the west side of the house visible from the street. The Drostes hired lawyer Jan Adams to represent them and sued Woodcliffe Estates and the refusing lot owners in Illinois state court.

During the course of the state court litigation, the subdivision hired Julien "to deliver a thorough architectural analysis of the plans that have been submitted to the Court" and provide Woodcliffe Estates with a report which "include[s] an analysis of the architectural schemes of the subdivision." App. 852. After Julien became involved, the Drostes asked him to modify the November 2000 plans to include a facade for the west side of the house in order to make it appear to be the front of the home, notwithstanding the fact he was representing the subdivision's interests in the lawsuit.[2]

---

[2]When asked about the potential conflict of interest, Julien said:

Well, I know the Drostes would certainly have liked me to [withdraw as the subdivision's agent] but no, frankly, I never did. I thought it odd that I found myself in a position where both parties could somehow find me liable, that I had these duties to both parties as an agent for one party and monitor of compliance by the other party, the other party's compliance. And I thought, wow, this is strange. How did I get myself in this position?

App. 914-15.

Julien prepared modified plans for the house in May 2001. Pursuant to the modified plans, Woodcliffe Estates and the Drostes entered into a settlement agreement which incorporated the modified plans. The settlement agreement also provided Julien would act as the agent of the lot owners to inspect the subsequent construction of the home and to approve any subsequent modifications to the plans. The settlement agreement was approved by the state court judge in a Stipulation and Order dated May 30, 2001.

After entry of the settlement agreement, the Drostes' contractor told them Julien's plans were flawed because they called for the house to be seventeen feet closer to the street in violation of the mandated site plan. In June 2001, Julien modified the house plans. The contractor informed the Drostes the new plans contained numerous errors and omissions which allegedly "forced [them] to choose between being in variance with certain municipal building codes or being in variance with the court order of May 30, 2001." App. 7. Ultimately, the Illinois state court found the Drostes' home to be in variance with the settlement agreement. The Drostes were found in contempt of court and ordered to pay a fine of $2500, as well as a $3500 award of attorney fees to the other subdivision lot owners.

The Drostes next sued Julien in federal district court relying upon diversity jurisdiction (they lived in Illinois, Julien maintained his offices in St. Louis, Missouri). Lawyer Adams again represented the Drostes. The complaint set forth three tort claims for negligence, negligent misrepresentation, and fraudulent misrepresentation. The complaint did not set forth any claims sounding in contract but in a section entitled "Facts Relevant to All Counts" alleged "Plaintiffs entered into a contract with Defendant for architectural services, which contract is memorialized in correspondence, drafts of house plans, drafts of proposed settlement agreements and a Stipulation and Order dated May 30, 2001 . . .." App. 5.

Before answering the complaint, Julien filed a motion to dismiss, or in the alternative, a motion for a more definite statement. He contended Illinois law should govern, he was immune from suit because he was acting as an expert witness in litigation, and the claims were barred by the Moorman[3] doctrine under Illinois law which, subject to limited exceptions, bars a party from suing in tort for purely economic loss. With respect to his economic loss argument, Julien contended the issue depended on whether the Drostes had a contract or were in privity of contract with him. The district court denied the motion to dismiss. The district court agreed Illinois law applied, but because the complaint alleged the Drostes contracted with Julien, he was not entitled to dismissal of the complaint based upon the Moorman doctrine.

During the course of discovery, it appeared lawyer Adams might have paid a portion of the $3500 attorney fees owed to the subdivision when the Drostes were held in contempt of court. Because those fees were part of the damages claimed against Julien in federal court, Julien brought a motion to disqualify Adams under Rule 4-3.7 of the Missouri Supreme Court Rules of Professional Conduct[4] on the ground she was likely to be a necessary witness at trial. The Drostes opposed the motion contending Julien had not shown Adams was a "necessary" witness (i.e., the "only" person who

---

[3] Moorman Mfg. Co. v. Nat'l Tank Co., 435 N.E.2d 443 (Ill. 1982).

[4] Rule 4-3.7 of the Missouri Supreme Court Rules of Professional Conduct provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

could testify to a disputed issue). The Drostes also contended it was inappropriate to disqualify Adams during the pretrial stage of the litigation even if she would be a necessary witness later at trial.

The district court held a telephone conference on the motion to disqualify counsel. During the conference, the district court gave the Drostes five days to decide whether they intended to pursue a damage claim in federal court for the fees paid by their lawyer Adams in the Illinois state court proceedings. When the Drostes indicated they wished to pursue those damages, the district court granted the motion to disqualify on the ground Adams was "likely to be a fact witness at any eventual trial." Without addressing the contention regarding pretrial disqualification, the district court made the disqualification effective immediately and gave the Drostes ten days in which to have a new lawyer enter an appearance on their behalf.

Prior to trial, both parties filed several motions in limine, including requests for Daubert[5] hearings to address the admissibility of expert witnesses. The district court held a full-day hearing to address the numerous motions. One of Julien's motions in limine resurrected the Moorman doctrine and asked for the exclusion of all evidence of negligence because the doctrine barred the Drostes from bringing tort claims for a purely economic loss. This time, Julien further argued the applicability of the Moorman doctrine did not depend on whether Julien had a contract with the Drostes.

Following the hearing, the district court entered an order addressing the outstanding motions in limine. The order also dismissed Counts I and II of Drostes' complaint (the negligence and negligent misrepresentation counts) indicating it was doing so "in accordance with the rulings made during the in-court hearing." Add. 13. The district court also determined expert witness testimony was unnecessary on the remaining count alleging fraudulent misrepresentation and therefore denied as moot

---

[5]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

a motion Julien brought to exclude the Drostes' expert on that issue. At the same time, the district court denied the Drostes' motion to exclude the testimony of Julien's fraud expert on the ground the motion was untimely.

With two of their three claims dismissed, the Drostes decided to voluntarily dismiss the remaining fraud claim with prejudice in order to pursue an immediate appeal. Julien subsequently filed a motion for costs arguing he was the prevailing party. The district court granted the motion and awarded costs of $9,946.62. The Drostes filed a timely appeal challenging 1) the dismissal of their negligence and negligent misrepresentation claims, 2) the denial of their motion in limine to exclude Julien's fraud expert, 3) the pretrial disqualification of lawyer Adams, and 4) the award of costs.

II

The Drostes ask this Court to address the dismissal of their negligence and negligent misrepresentation claims, contending such claims are not barred by the economic loss doctrine under Illinois law because they fall within the exceptions recognized in <u>Moorman</u> and its progeny. We are unable to review this claim in a meaningful way due to an inadequate record on appeal. The record indicates the district court dismissed the claims at issue "[i]n accordance with the *rulings made during the in-court hearing.*" Add. 13 (emphasis added). A transcript of the pertinent hearing was never requested or prepared, however, so we do not know the actual basis for the district court's rulings.[6] On appeal, the parties dispute not only the propriety of the dismissal, but even whether the district court dismissed the claims by reconsidering the motion to dismiss it had denied earlier, or by considering evidence

_____

[6]The Drostes were notified of the obligation to file a request for a transcript on May 23, 2006, shortly after the notice of appeal was filed. <u>See</u> Dist. Ct. Docket Entry #108. An entry on the Eighth Circuit docket sheet dated June 13, 2006, indicates no transcript was ordered.

outside the pleadings under a summary judgment standard.  Without being able to examine the transcript, this Court cannot conduct a meaningful review.  See Burull v. First Nat'l Bank of Minneapolis, 817 F.2d 56, 57 (8th Cir. 1987) ("Fed. R. App. P. 10(b) makes clear that it is the duty of the appealing party to see that a copy of the transcript or an appropriate substitute is included in the record on appeal. . . . Without a transcript, this Court can conduct no meaningful review of the issue raised by the [appellants].").  Accordingly, we affirm the district court as to this issue.  See Carter v. Jacobsen, 748 F.2d 487, 489 (8th Cir. 1984).

The next issue concerns the denial of the motion to exclude Julien's fraud expert, which the district court denied on the ground the motion was untimely.  This issue relates only to the fraud claim the Drostes chose to dismiss with prejudice in order to pursue an immediate appeal of the dismissal of their negligence claims.  Cf. Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1245 (8th Cir. 1994) (indicating claims dismissed by a party in order to immediately appeal other claims are deemed to be dismissed with prejudice).  Because the Drostes chose to dismiss their fraud claim with prejudice, it is no longer part of the case.  Thus, their challenge to the denial of the motion in limine is necessarily moot.

Next, we address the challenge to the pretrial disqualification of counsel.  We review the grant of a motion to disqualify a lawyer as trial counsel  for an abuse of discretion, but because the potential for abuse by opposing counsel is high, the Court subjects such motions to particularly strict scrutiny.  Macheca Transp. Co. v. Phila. Indem. Co., 463 F.3d 827, 833 (8th Cir. 2006).[7]

---

[7]The Drostes challenge only the pretrial disqualification of attorney Adams, and do not raise the other point they made in the district court regarding whether she was a "necessary" witness.  See Macheca Transport, 463 F.3d at 833 ("Rule 4-3.7 of the Missouri Supreme Court Rules of Professional Conduct has been interpreted to mean an attorney is a 'necessary witness' only if 'there are things to which he will be the only one available to testify.'"(quoting State ex rel. Wallace v. Munton, 989 S.W.2d 641,

"In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage." DiMartino v. Eighth Jud. Dist. Ct., 66 P.3d 945, 946 (Nev. 2003) (citing Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d 94 (1st Cir. 1988); United States v. Castellano, 610 F. Supp. 1151, 1167 (S.D.N.Y. 1985); ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1529 (1989); and State Bar of Mich. Comm. on Prof'l and Jud. Ethics, RI-299 (Dec. 18, 1997)); see also World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc., 866 F.Supp. 1297, 1303 (D. Colo. 1994) ("Rule 3.7 applies only to an attorney acting as an advocate at trial. Thus, with the informed consent of the client, a lawyer who is likely to be a necessary witness may accept employment and continue to represent the client in all litigation roles short of trial advocacy." (internal quotations omitted)); Cerillo v. Highley, 797 So.2d 1288, 1289 (Fla. Dist. Ct. App. 2001) (concluding trial court erred in disqualifying counsel who would be witness at trial from participating in pretrial depositions); In re Bahn, 13 S.W.3d 865, 873 (Tex. App. 2000) ("[A]n attorney who is disqualified from representation at trial can continue to participate in the client's case until trial commences.").

One purpose of the necessary witness rule is to avoid the possible confusion which might result from the jury observing a lawyer act in dual capacities – as witness and advocate. The jury is usually not privy to pretrial proceedings, however, so the rule does not normally disqualify the lawyer from performing pretrial activities; the one exception is when the "pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role." World Youth Day, 866 F. Supp. at 1303. In this case, there is no indication lawyer Adams's pretrial activity would have revealed her dual role at trial.

---

646 (Mo. Ct. App. 1999))). We therefore express no view on whether Adams was truly a necessary witness.

By its own terms, Rule 4-3.7 only prohibits a lawyer from acting as an "advocate *at a trial* in which the lawyer is likely to be a necessary witness." (Emphasis added). The district court did not indicate why a pretrial disqualification of counsel was necessary, or consider whether a pretrial disqualification would work a substantial hardship upon the Drostes. Because Rule 4-3.7 on its face does not apply to pretrial proceedings, we believe the district court abused its discretion in making the disqualification motion effective immediately.

Despite the error, the Drostes have not convinced us a remand is necessary. Citing United States v. Gonzalez-Lopez, 399 F.3d 924 (8th Cir. 2005), aff'd, 126 S. Ct. 2557 (2006), the Drostes contend the district court's error in making the disqualification motion effective immediately so infected the pretrial process that it constituted structural error, and the only remedy is a remand for new pretrial proceedings. Gonzalez-Lopez was, however, a criminal case involving the Sixth Amendment right to counsel. In the civil context, the constitutional right to counsel of one's own choice is not implicated. Thus, we believe an error in disqualifying counsel in the civil context is subject to a harmless error analysis. Cf. Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 439 (1985) ("If respondent were to proceed to trial and there received as effective or better assistance from substitute counsel than the disqualified attorney could provide, any subsequent appeal of the disqualification ruling would fail.").

The Drostes have not indicated what, if anything, their original lawyer would have done differently with respect to pretrial matters, or indicated how they were prejudiced by the conduct of substitute counsel. We therefore conclude any error the district court committed when it made the disqualification effective immediately was harmless.

Finally, we address the district court's award of costs, reviewing it for an abuse of discretion. Janis v. Biesheuvel, 428 F.3d 795, 801 (8th Cir. 2005). The Drostes

contend Julien should not be considered a prevailing party in this action because the voluntary dismissal with prejudice of Count III resulted in there being no final judgment. Assuming the lack of a final judgment makes a difference, we note Julien prevailed with respect to the two negligence counts *prior* to the voluntary dismissal of the fraud count and incurred costs in defending the action before the Drostes took their voluntary dismissal. In such a situation, a district court does not abuse its discretion in awarding costs. See Sequa Corp. v. Cooper, 245 F.3d 1036, 1038 (8th Cir. 2001) ("Here, defendants incurred costs in defending the action before Sequa took its voluntary dismissal. We are satisfied the district court did not abuse its discretion in allowing defendants to recover their costs.").

III

For the reasons stated, we affirm.

_____

-10-