# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1298

_____

Cedar Rapids Bank and Trust Company

*Plaintiff - Appellee*

v.

Mako One Corporation, et al.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa

_____

Submitted: November 13, 2018
Filed: March 21, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In August 2013, Mako One Corporation ("Mako") acquired the historic Badgerow Jackson Building in downtown Sioux City, Iowa, intending to restore it using state and federal historic tax credits. To help finance the $17 million restoration project, Mako prepared a tax credit bond offering of $6 million. Mako retained the law firm of Winthrop & Weinstine ("Winthrop") to draft the tax credit

bond. Nine months later, Cedar Rapids Bank and Trust Company ("CRBT") retained Winthrop to represent it in connection with the Badgerow building tax credit project. In April 2017, after Mako and Badgerow failed to make any payments on the lease, CRBT, through counsel Winthrop, sought to foreclose on the Badgerow Building. Mako retained separate counsel and moved to dismiss for failure to join a necessary party and to disqualify Winthrop as CRBT's counsel. The district court denied both motions and awarded a judgment of $5.2 million in favor of CRBT. Mako appeals the denial of its motions, and additionally appeals the validity of the final judgment. We affirm in part, and reverse in part.

## I.     Background

In August 2013, Mako acquired the historic Badgerow Jackson Building in downtown Sioux City, Iowa. To help finance the $17 million restoration project, Mako, Badgerow, and Bruce DeBolt (president of Mako) prepared a tax credit bond offering of $6 million, to be repaid within one year, which CRBT purchased in entirety. To secure the bond, Mako and Badgerow executed and delivered to CRBT mortgages on the building. Mako leased the building to Badgerow, which subleased it to co-defendant Badgerow Jackson MT, LLC ("MT"), of which Chevron USA, Inc. ("Chevron") owns 99.99%. Pursuant to an agreement between the two Badgerow companies, Chevron promised, upon satisfaction of certain conditions, to make capital contributions to MT for payment of the lease in exchange for any federal tax credits generated by the property.

When Mako first became interested in purchasing the property in November 2011, it retained the law firm of Winthrop & Weinstine. Winthrop attorney Jon Peterson provided legal services to Mako from November 2011 to May 2012 "in connection with [the] Badgerow Building tax credit project." Nine months later, in February 2013, CRBT sought to retain Winthrop to represent it in connection with the Badgerow building tax credit project. While foreseeing no conflict, Winthrop,

exercising "an abundance of caution," prepared a conflicts waiver letter for CRBT and Mako.

Addressed to both parties, the letter began by noting that "the interests of [CRBT] and Mako One are or may be adverse" with regard to the Badgerow tax credit project. Winthrop then requested consent from both parties with regard to current and future representation of CRBT and Mako One "on matters unrelated to the Transaction" and to Winthrop's "representation of the bank in connection with the Transaction." In accordance with the rules of professional responsibility, the letter then assured both parties that Winthrop "will not use confidential client information to either client's disadvantage" and "will be able to fully and properly represent [CRBT] and Mako One on their separate matters without representation of either client being affected by [Winthrop's] representation of the other client." The letter then requested that Mako agree to Winthrop's representation of CRBT in the transaction and unrelated matters, and promised that "[Mako] will not use the fact of our representation of the Bank as a basis to claim a conflict of interest on the part of [Winthrop], or to seek disqualification of the Firm, in any matter in which [Winthrop] represent[s] the Bank or may represent Mako One, other than the Transaction . . . ." (emphasis added). The letter similarly requested that CRBT agree to Winthrop's "representation of Mako One now or in the future in matters unrelated to the Transaction," and that CRBT would "not use the fact of our representation of Mako One as a basis to claim a conflict of interest on the part of [Winthrop], or to seek disqualification of the Firm, in any matter in which [Winthrop] represent[s] the Bank or may represent the Bank, including the Transaction . . . ." (emphasis added). Finally, the letter states that "[i]n the event that contentious disputes or litigation arise regarding the Transaction or if the Firm determines that continued representation may violate applicable Rules of Professional Conduct, the Firm will withdraw from

-3-

representation of Mako One or the Bank."[1]  The letter was then signed by DeBolt on behalf of Mako One and Gary Becker on behalf of CRBT.

Winthrop represented CRBT for the remainder of the transaction, and Mako One retained the Heidman Law Firm.  After the transaction closed in 2013, the parties negotiated and amended the bond maturity date six times, ultimately extending it to December 2016.  Winthrop represented CRBT in all of these subsequent amendments, and Mako was represented by Kutak Rock LLP.

In April 2017, after Mako and Badgerow failed to make any payments on the lease, CRBT sought to foreclose on the Badgerow Building without redemption in the Iowa state courts.  Mako removed the case to the Northern District of Iowa.  After suit was filed, DeBolt wrote to Winthrop:

> I believe Norm [Jones] has serious conflict issues at this point in time as the firm is required to withdraw from representing the bank.  I agreed to his representation of the bank for only so long as there was no adversarial conflict between Badgerow's interests and the bank's interests.  As that conflict has now occurred I believe Norm, and the firm, should immediately withdraw entirely from the matter.  Norm's actions have already damaged our legal position.  The firm may be responsible for losses that are incurred as a result.

Winthrop partner Norman Jones responded:

> On your statement about legal conflict, please review with counsel the conflict waiver letter that Mako One signed as a former client of the firm in early 2013.  The letter requires us to withdraw from representing both the bank and Mako One in the case of a contentious dispute.  Winthrop's

---

[1] The original draft sent to Mako stated that Winthrop "*may* withdraw from the representation of Mako One or the Bank," however Mako demanded that "may" be changed to "will."

last work for Mako One was approximately 5 years ago and it is not a current client.

Mako claims that this was the first time Winthrop claimed the firm no longer represented Mako.

During the foreclosure proceeding, CRBT moved to have a receiver appointed. The motion was set for hearing on June 21, 2017. The day before the hearing, Mako and Badgerow both filed for bankruptcy in California. As a result, the district court cancelled the hearing and stayed the foreclosure action. The bankruptcy proceeding was ultimately dismissed in November 2017 for failure to prosecute.

The court then held evidentiary hearings and oral arguments on three motions: CRBT's motion to appoint a receiver; Mako's motion to dismiss for failure to join Chevron as a necessary party; and Mako's non-dispositive motion to disqualify Winthrop as CRBT's counsel ("November motions"). At the evidentiary hearing, Mako made an oral motion to exclude the testimony of Winthrop partner Norman Jones, who did not serve as an advocate during the hearing. During oral argument, Mako represented that it could produce legal authority that the case should be dismissed with prejudice due to Winthrop's conflict of interest. The district court reserved decision on defendant's motions until receipt of the promised legal authority. While awaiting the supplemental filing, the district court granted CRBT's motion to appoint a receiver. Counsel for Mako filed a supplemental list of authorities, which the district court concluded were inapposite. The district court denied all three of Mako's motions in a written order.

In December 2017, CRBT filed a motion for default judgment or, in the alternative, summary judgment. Mako did not oppose the motion, and the court entered judgment in favor of CRBT, including a money judgment of $5.2 million. Mako then filed a motion to set aside judgment pursuant to Federal Rule of Civil

Procedure 60(b) and to stay the case, presenting the court with various assertions regarding CRBT's receipt of state and federal tax credits from construction on the Badgerow Jackson Building. The district court found Mako's assertions internally contradictory and unsupported by evidence, and denied Mako's motion.

Mako now appeals the denial of the November motions, and additionally argues that the district court erred (1) in proceeding to the merits before deciding the disqualification motion, and (2) in closing the case while the receiver's obligations are ongoing. The latter argument was not raised below and we will not ordinarily consider an argument raised for the first time on appeal. Gap, Inc. v. GK Development, Inc., 843 F.3d 744, 748 (8th Cir. 2016) (quoting United States v. Hirani, 824 F.3d 741, 751 (8th Cir. 2016)). We have set forth limited exceptions to our general rule. We have exercised discretion to consider an issue raised on appeal for the first time when "the proper resolution is beyond any doubt . . . or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." Id. at 748-49 (quoting Weitz Co. v. Lloyd's of London, 574 F.3d 885, 891 (8th Cir. 2009)). Mako has set forth no legal authority for its assertion that the district court acted improperly in closing the case. We find the claim without merit.

## II.    Discussion

### A. Motion to Dismiss for Failure to Join a Necessary Party

"We review de novo conclusions of law underlying a district court's Rule 19(a) determination." Two Shields v. Wilkinson, 790 F.3d 791, 794-95 (8th Cir. 2015) (citing Gwartz v. Jefferson Mem'l Hosp. Ass'n, 23 F.3d 1426, 1428 (8th Cir. 1994)). Mako argues that the district court erred in denying its motion to dismiss the action for failure to join Chevron as a necessary party pursuant to Federal Rule of Civil Procedure 19(a)(1). Mako claims that Chevron is a necessary party because the

judgment impairs Chevron's ability to protect its interest in the Badgerow Jackson Building federal tax credits. Mako cites only the rule in support of this claim.

Rule 19(a)(1) states:

(1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Mako has raised a number of issues that are unsupported in the record and will not be considered. Mako's claims that Chevron purchased Mako's contractual rights to $3.2 million in tax credits (which it asserts exposes it to potential but un-asserted claims) and Mako's claims related to a "Super Non-Disturbance Agreement" are simply inadequately developed in this record to provide any ground for relief.

Even if Mako's claims related to Chevron's contractual rights were somehow implicated, it would not make Chevron a necessary party. As the district court correctly pointed out, "[t]he focus [of Rule 19(a)(1)] is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." LLC Corp. v. Pension Ben. Guar. Corp., 703 F.2d 301, 305 (8th Cir. 1983) (citing Morgan Guaranty Trust Co. v. Martin, 466 F.2d 593, 598-99 (7th Cir. 1972)); see also Helzberg's Diamond Shops, Inc. v. Valley W. Des Moines Shopping Ctr., Inc., 564 F.2d 816, 820 (8th Cir. 1977) (citation omitted) ("[A] person does not become indispensable to an action to determine rights under a contract simply because that person's rights or obligations under an entirely separate contract will be affected by the result of the action."). The district court was able to accord complete relief among existing parties.

## B. Damages Award

Mako challenges the damages award in this case. "In a bench trial, ascertaining the plaintiff's damages is a form of fact-finding that can be set aside only if clearly erroneous." Hall v. Gus Construction Co., Inc., 842 F.2d 1010, 1017 (8th Cir. 1988) (citing Webb v. Arresting Officers, 749 F.2d 500, 501-02 (8th Cir. 1984)). We reverse such findings "only in those rare situations where we are pressed to conclude that there is plain injustice or a monstrous or shocking result." Id. (internal quotation marks omitted) (quoting Occhino v. United States, 686 F.2d 1302, 1305 (8th Cir. 1982)). In other words, it must "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Kaplan v. Mayo Clinic, 847 F.3d 988, 992 (8th Cir. 2017) (quoting In re Nevel Props. Corp., 765 F.3d 846, 850 (8th Cir. 2014)).

In its Rule 60(b) motion requesting relief from the judgment, Mako asserted that CRBT had received over $5 million in state and federal tax credits. The district court found this assertion to be unsupported in the record and denied the motion. Mako now argues that the district court erred in calculating the money judgment

without factoring in CRBT's received tax credits. Here on appeal Mako once again fails to point to any evidence in the record supporting this claim. The district court properly concluded that no evidence in the record supports this claim.

### C. Motion to Disqualify Counsel

"We review the grant of a motion to disqualify a lawyer as trial counsel for an abuse of discretion, but because the potential for abuse by opposing counsel is high, the Court subjects such motions to particularly strict scrutiny." Zerger & Mauer LLP v. City of Greenwood, 751 F.3d 928, 931 (8th Cir. 2014) (quoting Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007)).

The Northern District of Iowa applies the Iowa Rules of Professional Conduct to members of the District Court's bar. See Northern District of Iowa Local Rule 83(f)(1) (2018). These rules apply to conflicts of interest involving former clients. See Iowa Rules of Professional Conduct 32:1.9 (2012). The parties have spilled much ink in the briefing arguing whether CRBT is a current client of the Winthrop firm. We need not resolve the question as it is undoubtedly true that Mako is a former client to whom the Winthrop firm owed a duty to avoid conflicts. Rule 32:1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Iowa R. Prof. Conduct 32:1.9 (2012). There is no question that, in representing CRBT in the purchasing of the very bond it had drafted for Mako in 2012, Winthrop undertook to represent another person in a matter "substantially related" to the matter of the Mako representation. See id. cmt. 3 ("Matters are 'substantially related' for purposes of this rule if they involve the same transaction.").

-9-

Under Rule 32:1.9, a conflict can be waived only if the former client consents in writing after being fully informed. Under Iowa law informed consent "denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Iowa R. Prof. Conduct 32:1.0 (2012). The drafter's comment on this section elaborates on informed consent:

> Ordinarily, [informed consent] will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct, and a discussion of the client's or other person's options and alternatives. . . . [A] lawyer who does not personally inform the client or other person [of facts or implications] assumes the risk that the client or other person is inadequately informed and the consent is invalid.

Id. cmt. 6 (alterations added).

Winthrop's consent waiver letter is inadequate to meet the requirements of this rule. It makes no attempt to explain to Mako the advantages, disadvantages, risks or benefits that Mako would confront by allowing Winthrop to represent CRBT. Indeed, the letter makes no pretense to elucidate any risk involved, stating only that "the interests of the Bank and Mako One are or may be adverse." This representation hangs in the air unexplained, allowing the reader to pour into it any content he might deem to. Even more troubling, the third paragraph asks Mako to agree that it will not claim a conflict of interest or seek disqualification against Winthrop in any matter *other than the transaction*. This would seem to resolve the conflict question in its entirety, as Mako has timely claimed a conflict in this transaction. Winthrop claims that this "drafting error" was understood to mean something different by Mako. This assertion, too, flutters in the air unsupported and is belied by the record. The record

does not contain evidence sufficient to establish a mutual mistake, or any other legal basis for reformation of the language. But in the end, the problem the Winthrop firm confronts is that no informed consent was ever obtained from Mako. Mako was never informed that its counsel would represent CRBT in a suit related to the very same bonds that it drafted on Mako's behalf. Winthrop did not inform Mako that it was remotely possible that Winthrop would go so far as to call one of its own partners to testify against Mako in an action related to its representation of Mako. Under these circumstances, we conclude that informed consent was not obtained and Mako did not validly waive the conflict of interest.

Mako next argues that the district court erred in proceeding to the merits before deciding the disqualification motion. However, this is a mis-characterization of the procedural history. The district court made only one ruling while awaiting Mako's production of legal authority supporting disqualification of counsel, and that was to approve CRBT's request to appoint a receiver. This was not a ruling on the merits, which came months later when the court granted an unopposed motion for summary judgment. Mako makes no argument that the appointment of the receiver was a dispositive order; instead it simply cites Bowers v. The Ophthalmology Group, 733 F.3d 647 (6th Cir. 2013), as supporting its position. In Bowers, the Sixth Circuit held that the district court erred by granting summary judgment without ruling on a motion to disqualify counsel and then declaring the disqualification motion moot. Id. at 655. Here, the district court made no such ruling on the merits before deciding the motion to disqualify counsel. Bowers is distinguishable, and does not conflict with the district court's order of procedure.

Because we conclude that the district court erred in failing to disqualify Winthrop as counsel for CRBT, we must consider the appropriate remedy. The question is whether the failure to disqualify Winthrop "indelibly stamped or shaped" the proceedings. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 376 (1981). In Fiandaca v. Cunningham, 827 F.2d 825 (1st Cir. 1987), the First Circuit grappled

with a similar issue. Like this case, the First Circuit concluded that the trial court had allowed a lawyer to continue representation despite an apparent conflict. Id. at 831. The court than considered whether the court's abuse of its discretion resulted in an adverse impact on the rights of the opposing party. Concluding that there was none, the court found the error harmless. Id. at 831-32. We find this analysis persuasive. Here Winthrop had no compromised ability to settle with Mako, nor has Mako pointed to any change in its settlement posture because of the improper representation. Given the combative procedural history of this case, it appears the parties were unlikely to settle, regardless of representation.

With regard to the merits, Mako has not claimed that Winthrop used confidential information gained from preparing Mako's bond during its representation of CRBT in this suit. The record reflects no actual breach of confidentiality nor any reason to doubt that Winthrop upheld its duty of confidentiality to its former client. Finally, it was Mako's counsel—not Winthrop—who failed to oppose CRBT's motion for default judgment, or in the alternative, summary judgment. Thus, Mako's loss is more directly attributable to its own counsel's failure to act than anything the Winthrop firm did or did not do. There is no reason to believe that Mako's lawyers would have acted any differently had CRBT been represented by a different firm. Given the failure to oppose the motion for judgment, there is no reason to believe that the CRBT representation was an important, let alone determinative, fact.

Finally, Mako makes no credible claim that the ultimate outcome in the case was in any way influenced by the conflicted representation. It points to no evidence that was improperly used or any evidence that it was deprived from using because of the conflict. Mako does not assert that it was deprived of a chance to advance any argument or claim because of the representation. In short, Mako makes no showing of harm by the representation.

## III.    Conclusion

For the foregoing reasons, we affirm the district court's judgment for money damages, and we reverse the district court's denial to disqualify counsel in any future proceedings.  As proceedings continue in the case below and the Winthrop law firm has a conflict of interest necessitating removal as counsel, we remand for further proceedings consistent with this opinion.

_____