# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1583

_____

United States of America

*Plaintiff - Appellee*

v.

Rakesh Vasant Hirani
a/k/a Rakeshkumar Vasantlal Patel

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska

_____

Submitted: February 11, 2016
Filed: May 31, 2016

_____

Before SMITH and COLLOTON, Circuit Judges, and GRITZNER,[1] District Judge.

_____

GRITZNER, District Judge.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

The United States brought an action against Rakesh Hirani, also known as Rakeshkumar Patel (Appellant), pursuant to 8 U.S.C. § 1451(a), seeking revocation of Appellant's citizenship and cancellation of his certificate of naturalization. The district court[2] granted summary judgment in favor of the United States. This appeal followed. We affirm.

## I.    BACKGROUND

Appellant was born in India in 1972 and was named Rakeshkumar Vasantlal Patel. After arriving in the United States in 1991, Appellant applied for asylum using his birth year, 1972, and his given name, Rakeshkumar Vasantlal Patel. Prior to coming to the United States, Appellant also used the family name Rakesh Hirani, but never attempted to change his legal name. The U.S. Immigration and Naturalization Service (INS) denied Appellant's request for asylum and notified Appellant by U.S. mail of the denial on October 13, 1993, and again on February 24, 1994.

Following the denial of Appellant's asylum request, a deportation hearing was held on November 22, 1995. Appellant did not appear and now contends he did not receive notice of that hearing. After the hearing, the INS issued a decision and order finding Appellant deportable from the United States. A warrant of deportation was issued against him on March 18, 1996. On April 5, 1996, the INS sent a letter to Appellant informing him that he had been found deportable and instructed him to report to a U.S. Immigration Officer on April 16, 1996, to complete his deportation. Appellant did not report as instructed. Appellant argues he did not receive the notice until August 1996. Nonetheless, Appellant voluntarily left the country on the advice of an attorney in 1997.

---

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

In 1998, Appellant's wife filed a petition with the INS on Appellant's behalf for permanent residency using the name Rakesh Hirani and a false date of birth in 1968. According to Appellant, the same attorney who advised him to leave the country in 1997 prepared the 1998 petition for permanent residency. The INS approved Appellant's petition on October 18, 1999, and admitted Appellant as a permanent resident on April 11, 2000.

On January 15, 2003, Appellant filed an application for naturalization, Form N-400, again using the name Rakesh Hirani and a false date of birth in 1968. Appellant testified that he did not fill out the Form N-400, but could not remember who would have completed it for him. The answers to the questions on the Form N-400 certified that Appellant had never used another name, had never given false information to attain an immigration benefit, and had never been deported from the United States. Appellant signed and dated the Form N-400, affirming its contents under penalty of perjury. The U.S. Citizenship and Immigration Services (USCIS)[3] approved Appellant's application for naturalization on May 29, 2003.

On January 28, 2014, the United States filed an action to revoke Appellant's naturalization. On January 16, 2015, the United States moved for summary judgment, arguing that Appellant procured his naturalization illegally, or alternatively, that Appellant procured naturalization by material misrepresentation or concealment. The district court granted the motion on the basis of material misrepresentation or concealment. This appeal followed.

---

[3]The INS ceased to exist in 2003 and its functions were transferred to the Department of Homeland Security. See 6 U.S.C. §§ 251, 552, 557. USCIS is a division within the Department of Homeland Security.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Castillo v. Ridge, 445 F.3d 1057, 1060 (8th Cir. 2006). "Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." Fezard v. United Cerebral Palsy of Cent. Ark., 809 F.3d 1006, 1009 (8th Cir. 2016) (quoting Neb. Beef, Ltd. v. Wells Fargo Bus. Credit, Inc., 470 F.3d 1249, 1251 (8th Cir. 2006)). "This court may affirm on any basis supported by the record." Hasenwinkel v. Mosaic, 809 F.3d 427, 431 (8th Cir. 2015).

"[T]he Government 'carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship'" because the loss of American citizenship can have "severe and unsettling consequences." Fedorenko v. United States, 449 U.S. 490, 505 (1981) (quoting Costello v. United States, 365 U.S. 265, 269 (1961)); see also United States v. Hansl, 439 F.3d 850, 853 (8th Cir. 2006). Due to the importance of the rights at stake, "[t]he evidence justifying revocation of citizenship must be 'clear, unequivocal, and convincing' and not leave 'the issue in doubt.'" Fedorenko, 449 U.S. at 505 (quoting Schneiderman v. United States, 320 U.S. 118, 125 (1943)). The Supreme Court has analogized the government's burden of proof in denaturalization proceedings to the beyond-a-reasonable-doubt standard of criminal cases. See Klapprott v. United States, 335 U.S. 601, 612 (1949) ("This burden is substantially identical with that required in criminal cases–proof beyond a reasonable doubt."); see also Kungys v. United States, 485 U.S. 759, 795 (1988) (Stevens, J., concurring in the judgment) ("[T]he factors that support the imposition of so heavy a burden are largely the same in both contexts.").

## B. Revocation of Citizenship pursuant to 8 U.S.C. § 1451

The United States shall institute proceedings to revoke citizenship if naturalization was "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a).

Appellant argues the district court erred by considering circumstantial evidence to conclude that Appellant had willfully misrepresented or concealed a material fact. Citing Espinoza-Espinoza v. INS, 554 F.2d 921, 925-26 (9th Cir. 1977), the district court explained that a misrepresentation or concealment is willful if it is deliberate and voluntary, and that circumstantial evidence can demonstrate willfulness. Appellant does not dispute the district court's interpretation of willfulness, but rather argues it was error to consider circumstantial evidence when the government was required to produce evidence that is clear, unequivocal, and convincing.

Appellant's argument assumes that circumstantial evidence is inherently less probative or reliable than direct evidence and is therefore unable to satisfy high evidentiary burdens. Yet Appellant's distinction between the probative value of direct and circumstantial evidence has no basis in the law, which treats both types of evidence alike. "The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003) (quoting Rogers v. Mo. Pac. R. Co., 352 U.S. 500, 508 n.17 (1957)). "The adequacy of circumstantial evidence also extends beyond civil cases; we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." Id.; see United States v. Crumley, 528 F.3d 1053, 1065 (8th Cir. 2008) ("[C]ircumstantial evidence is just as probative as any other type of evidence."); United States v. McCrady, 774 F.2d 868, 874 (8th Cir. 1985) ("Circumstantial evidence is 'intrinsically as probative as direct evidence' and may

be the sole support for a conviction." (quoting United States v. Two Eagle, 633 F.2d 93, 97 (8th Cir. 1980))).

In both civil and criminal cases, circumstantial evidence is considered just as probative as direct evidence, and for that reason, circumstantial evidence may constitute evidence that is clear, unequivocal, and convincing. Because circumstantial evidence is compatible with the evidentiary standard applicable to denaturalization proceedings, the district court did not err by considering circumstantial evidence to find Appellant had willfully concealed or misrepresented material facts.

### C.    Appellant's Two Names

Appellant also claims the district court erred by considering Appellant's use of the name Rakeshkumar Patel in his 1991 asylum application, as well as on bills and tax returns dated from 2011 through 2014, to determine that Appellant procured naturalization by willful misrepresentation. Arguing that such evidence does not "relate to Appellant's naturalization in 2003," Appellant's Br. 19, as required by the four-factor test established by the Supreme Court in Kungys, Appellant asserts that only alleged concealments relating to Appellant's naturalization process are to be considered for this inquiry.

Section 1451(a) covers only concealments or misrepresentations that procure an order and certificate of naturalization. Kungys, 485 U.S. at 773 (plurality opinion). "Procurement of other benefits, including visas, is not covered." Id.; see also United States v. Ciurinskas, 976 F. Supp. 1167, 1189 (N.D. Ind. 1997) ("Naturalization that was procured by 'concealment of a material fact or by willful misrepresentation' in the naturalization, as opposed to immigration, process, may be revoked and canceled." (quoting § 1451(a) (citing Kungys, 485 U.S. at 773 (plurality opinion)))). Appellant argues that his use of the names Rakeshkumar Patel and Rakesh Hirani outside the naturalization context may not be considered *at all* under

Kungys because his prior use of those names does not relate to his naturalization. We disagree.

Kungys makes clear that misrepresentations made outside the naturalization context are not grounds for denaturalization under § 1451(a). But Kungys did not hold that a court may not consider statements made outside the naturalization context to determine whether statements made in the naturalization process were true or false. Contrary to Appellant's assertions, the district court did not view Appellant's past use of the names Rakeshkumar Patel and Rakesh Hirani to be actionable misrepresentations themselves. Rather, the district court properly considered Appellant's prior use of those names to determine whether Appellant was lying when he wrote on the Form N-400 that his legal name and only name was Rakesh Hirani. Appellant's habitual use of the name Rakeshkumar Patel throughout his life clearly relates to whether Appellant's true and only name was Rakesh Hirani. See *Misrepresentation*, Black's Law Dictionary (10th ed. 2014) ("an incorrect, unfair, or false statement; an assertion that does not accord with the facts"); Shipley v. Ark. Blue Cross & Blue Shield, 333 F.3d 898, 904 (8th Cir. 2003) ("A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question."). It was entirely proper for the district court to consider Appellant's use of the names Rakesh Hirani and Rakeshkumar Patel to determine Appellant's name. Therefore, the district court did not err by considering Appellant's prior use of the names Rakeshkumar Patel and Rakesh Hirani outside the naturalization context.

## D. Sufficiency of Evidence

Appellant also challenges the sufficiency of evidence supporting the district court's judgment. There are four requirements for revoking naturalization on the basis of a misrepresentation: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have

procured his citizenship as a result of the misrepresentation or concealment. Kungys, 485 U.S. at 767 (citing Fedorenko, 449 U.S. at 507 n.28). Summary judgment is warranted "if, viewing the evidence in the light most favorable to the naturalized citizen, there is no genuine issue of material fact as to whether clear, unequivocal, and convincing evidence supports denaturalization." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

### 1.    Misrepresentation or Concealment

Appellant's Form N-400 stated that Appellant's legal name and only name was Rakesh Hirani, that he was born in 1968, and that he had never been ordered deported. Appellant argues there are genuine issues of fact as to whether Appellant himself misrepresented or concealed any information to secure naturalization, contending that someone other than Appellant completed Appellant's Form N-400. Although Appellant testified that he cannot identify who prepared the application for him, the Form N-400 states that Appellant prepared the form himself. Furthermore, Appellant admits he signed the Form N-400, certifying its contents were correct. That certification is sufficient to show, clearly, unequivocally, and convincingly, that Appellant made the misrepresentations. See Injeti v. U.S. Citizenship and Immigration Servs., 737 F.3d 311, 318 (4th Cir. 2013) (citing United States v. Sadig, 271 F. App'x 290, 295 (4th Cir. 2007) (unpublished) ("The applicant imposes a requirement on himself to be forthcoming by swearing under penalty of perjury that the information in the application is true as of the date of the interview." (citation and internal quotation marks omitted)). Appellant's lack of recall regarding who transcribed the answers onto the Form N-400 does not undermine the undisputed facts that Appellant admittedly provided the answers to the questions on the Form N-400 and that he signed the Form N-400 attesting the accuracy of those answers under penalty of perjury. See Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." (alteration in original) (citation omitted)). While Appellant makes much of a factual dispute surrounding the preparation of the Form N-400, that dispute

is ultimately neither genuine nor material. See Gazal v. Boehringer Ingelheim Pharm., Inc., 647 F.3d 833, 837-38 (8th Cir. 2011) ("A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986))). The district court did not err in finding undisputed and unequivocal evidence that Appellant misrepresented or concealed some fact.

### 2. Willfulness of Misrepresentation

Appellant does not dispute the willfulness of Appellant's misrepresentation or concealment during the naturalization proceedings, and in any event the district court did not err in concluding that Appellant's misrepresentation or concealment was deliberate and voluntary. The government is not required to prove intent to deceive, but rather must demonstrate only that an applicant willfully made a representation that does not accord with the facts. See Espinoza-Espinoza, 554 F.2d at 925. Appellant's signature under penalty of perjury affirming that his name, and only name, was Rakesh Hirani demonstrates that the misrepresentation was willful. The district court did not err in finding undisputed and unequivocal evidence that this requirement had been met.

### 3. Materiality

A concealment or misrepresentation is material if it has that "natural tendency to influence the decisions of the Immigration and Naturalization Service." Kungys, 485 U.S. at 772. "[T]he test more specifically is whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." Id. at 771-72. A misrepresentation or concealment has such a tendency "if the true [representation] would predictably have disclosed other facts relevant to [the applicant's] qualifications." Id. at 774. The issue of materiality is a legal question for the court. Id. at 772. "[W]hat is relevant is what would have ensued from official knowledge of the misrepresented fact." Id. at 775.

-9-

Appellant's legal name Rakeshkumar Patel, his true date of birth, and his deportation history are material facts under Kungys. The misrepresentation and concealment of Appellant's identity had the natural tendency to affect his naturalization because, had the USCIS known Appellant was named Rakeshkumar Patel, Appellant's immigration history and qualifications to naturalize could have been revealed. Thus, these misrepresentations and concealments clearly would tend to impede the inquiry into Appellant's naturalization eligibility. See Monter v. Gonzales, 430 F.3d 546, 557 (2d Cir. 2005) (holding that a misrepresentation made to procure a visa or entry into the United States is material if it "tends to shut off a line of inquiry" relevant to eligibility) (quoting Matter of S- and B- C-, 9 I. & N. Dec. 436, 447 (BIA 1961), abrogated on other grounds by Matter of Ng, 17 I. & N. Dec. 536, 537 (BIA 1980)); Kulle v. INS, 825 F.2d 1188, 1196 (7th Cir. 1987) (holding that a misrepresentation in the immigration context was material "insofar as it closed off a relevant line of inquiry" as to eligibility). Moreover, Appellant's identity as Rakeshkumar Patel was material because a deportation order had been filed against him under that name, which bore directly on his eligibility to naturalize. For these reasons, the district court properly concluded Appellant's misrepresentations were material.

### 4. Procurement

Although we have concluded that Appellant's misrepresentations were material, we must still determine whether Appellant procured his naturalization as a result. An applicant "procures" naturalization on the basis of a misrepresentation if there is a causal connection between the misrepresentation and the acquisition of citizenship. See United States v. Latchin, 554 F.3d 709, 713 (7th Cir. 2009) ("[A]t a minimum, the procurement requirement 'demands . . . that citizenship be obtained as a result of the application process in which the misrepresentations or concealments were made.'" (second alteration in original) (quoting Kungys, 485 U.S. at 776 (plurality))). In Kungys, a majority of the Court agreed that the procurement requirement was separate from materiality. Those justices divided, however, as to the

-10-

required nexus between an applicant's misrepresentation and the acquisition of citizenship. Kungys, 485 U.S. at 776-84. The Seventh Circuit has aptly summarized that division:

> Justice Stevens, speaking for two others, advocated what amounts to a "but for" test-that the government has to establish that citizenship would not have been conferred but for the misrepresentation. Justice Scalia, joined by two others, rejected this construction because it would make the materiality requirement meaningless, "requiring, in addition to distortion of the decision [(procurement)], a natural tendency to distort the decision [(materiality)]." [Kungys, 485 U.S.] at 776. But Justice Scalia and company did agree that procurement requires more than just obtaining citizenship "as a result of the application process in which the misrepresentations or concealments were made." To them, proof of a material misrepresentation created a presumption that citizenship was procured on that basis. However, the citizen could rebut that presumption by showing that she was actually eligible for citizenship. Justice Brennan wrote a separate concurrence joining in Justice Scalia's opinion to make a controlling plurality. Justice Brennan's controlling opinion stressed that citizenship is a "most precious right" and added a more restrictive gloss to Justice Scalia's view. Id. at 783 (Brennan, J., concurring). Although Justice Brennan agreed that a material falsehood can raise a presumption of ineligibility, he said that presumption does not arise unless the government produces evidence sufficient to raise a "fair inference of ineligibility." Id. at 783 (Brennan, J., concurring). At the end of the day, then, the government only wins if it shows that the citizen misrepresented a material fact *and* it is "fair to infer that the citizen was actually ineligible." Id. at 784 (Brennan J., concurring).

Latchin, 554 F.3d at 713-14 (first and second alterations in original) (footnote omitted); accord United States v. Mensah, 737 F.3d 789, 808 (1st Cir. 2013); United States v. Alferahin, 433 F.3d 1148, 1155 (9th Cir. 2006); United States v. Puerta, 982 F.2d 1297, 1302-04 (9th Cir. 1992); United States v. Agunbiade, 172 F.3d 864, 1999 WL 26937, at *2-3 (4th Cir. Jan. 25, 1999) (unpublished per curiam).

-11-

Applying the Latchin court's rationale, Justice Brennan's concurring opinion in Kungys controls. See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'") (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). Although Justice Brennan agreed with Justice Scalia's opinion for the Court that a presumption of disqualification should arise once materiality is proved, Justice Brennan added that such a presumption should arise only where there is a fair inference that the applicant was actually disqualified. Kungys, 485 U.S. at 783 (Brennan, J., concurring). In joining the Court's opinion, Justice Brennan remarked that "nothing in the Court's opinion is inconsistent with this standard . . . ." Id.; see also Puerta, 982 F.2d at 1304 ("Justice Brennan's construction may be taken as the holding.").

In the present case, the district court found that Appellant had procured his naturalization by misrepresenting or concealing his true name. The district court reasoned that had Appellant disclosed his true name, the USCIS would have realized Appellant was statutorily ineligible to naturalize. On appeal, the government argues Appellant was statutorily ineligible to naturalize because following his deportation, Appellant was subject to a ten-year bar on reentering the United States pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii), and therefore could not lawfully naturalize during that period. The government did not raise this basis for Appellant's ineligibility with the district court.

Ordinarily, we will not consider an argument raised for the first time on appeal. Hartman v. Workman, 476 F.3d 633, 635 (8th Cir. 2007). However, we may consider a newly raised argument "if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 809 F.3d 1018, 1022 (8th Cir. 2016) (quoting Orr

v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002)). We have addressed new arguments raised on appeal where the new issue is encompassed in a more general argument previously raised and no new evidence is presented on appeal. See, e.g., PCTV Gold, Inc. v. SpeedNet, LLC., 508 F.3d 1137, 1144 n.5 (8th Cir. 2007); Sexton v. Martin, 210 F.3d 905, 914 n.8 (8th Cir. 2000); Stockmen's Livestock Mkt., Inc. v. Norwest Bank of Sioux City, 135 F.3d 1236, 1243 n.4 (8th Cir. 1998).

Moreover, we may affirm the district court's grant of a motion for summary judgment on any basis supported by the record. Haukereid v. Nat'l R.R. Passenger Corp., 816 F.3d 527, 531 (8th Cir. 2016) (quoting Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013)); see also Gralike v. Cook, 191 F.3d 911, 921 n.9 (8th Cir. 1999) (affirming the grant of summary judgment on grounds not considered by the district court); United States v. Sager, 743 F.2d 1261, 1263 n.4 (8th Cir. 1984) ("We review judgments, not opinions, and we may affirm a judgment on any ground supported by the record, whether or not that ground was urged below or passed on by the District Court.").

It is appropriate that we consider the government's newly raised argument that Appellant was disqualified from naturalizing due to a ten-year reentry bar following his deportation because it is a purely legal argument, requires no further factual development, and is encompassed by the government's more general argument before the district court. As previously noted, the government argued on summary judgment that Appellant's deportation history rendered him ineligible to become a lawful permanent resident and therefore ineligible to become a United States citizen. The government's new reference to 8 U.S.C. § 1182(a)(9)(A)(ii) as a specific legal basis for that argument is merely a citation germane to Appellant's ability to naturalize lawfully, and is therefore properly before this court.

To be eligible to naturalize, an alien must be a lawful permanent resident. § 1429. Under § 1255(a), an alien may become a lawful permanent resident only if

-13-

he is admissible to the United States and eligible for an immigrant visa. An alien who "departed the United States while an order of removal was outstanding, and who seeks admission within 10 years of the date of such alien's departure or removal . . . is inadmissible." § 1182(a)(9)(A)(ii). Taken together, these statutory provisions entail that an alien who is barred from admission to the United States for a period of years following deportation is ineligible to naturalize during that period.

The evidence is clear, unequivocal, and convincing that Appellant left the United States while an order of removal was outstanding, and that Appellant sought admission to the United States within ten years of his departure. Appellant was thus inadmissible under § 1182(a)(9)(A)(ii), ineligible to become a lawful permanent resident under § 1255(a), and therefore statutorily ineligible to naturalize under § 1429. Because Appellant's material misrepresentations concealed his statutory ineligibility to naturalize, Appellant procured his naturalization on the basis of those misrepresentations.

For the above reasons, the undisputed facts established clear, unequivocal, and convincing evidence to revoke Appellant's citizenship and to cancel Appellant's certificate of naturalization on the basis of representation or concealment of a material fact.

### E.  Collateral Attack on Underlying Deportation Order

Appellant contends that even if we consider the statutory bar on reentry following Appellant's deportation, summary judgment was nonetheless inappropriate because Appellant has disputed the validity of the 1995 deportation order. Specifically, Appellant contends he never received adequate notice of his deportation hearing, and that the deportation order was therefore invalid for failure of due process.

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available . . . as of right." § 1252(d)(1). "A 'petitioner has not exhausted administrative remedies with respect to' a particular issue if he 'fails to raise [it] when he appeals to the Board.'" Martinez Carcamo v. Holder, 713 F.3d 916, 925 (8th Cir. 2013) (alteration in original) (quoting Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004)). Although this Court does have jurisdiction to review certain unexhausted constitutional claims, we will not consider claims that concern procedural errors correctable by the administrative tribunal. Bracic v. Holder, 603 F.3d 1027, 1032 (8th Cir. 2010). Moreover, even if we were to entertain a due process challenge to Appellant's 1995 deportation order, Appellant could only mount such a challenge by showing he was functionally deprived of the right to judicial review. Appellant cannot make that showing.

The statute provides that an order of removal entered *in absentia* may be rescinded "upon a motion to reopen filed *at any time* if the alien demonstrates that the alien did not receive notice" of the hearing. § 1229a(b)(5)(C)(ii) (emphasis added). Even if Appellant's claimed notice issue were not a correctable procedural error under Bracic, Appellant would nonetheless be barred from disputing the validity of the 1995 deportation order because, in the intervening twenty years, he never filed a motion to reopen the removal proceedings. It is also significant that Appellant admittedly obtained and acted on the advice of an attorney when he left the country in 1997, and yet did not pursue the notice issue, further demonstrating that Appellant was not functionally denied judicial review of the 1995 removal order. Because Appellant acted on advice of counsel at the time, and because § 1229a(b)(5)(C)(ii) does not set out any time limit for motions to reopen, Appellant was not denied the right to judicial review of the 1995 deportation order, and Appellant has not exhausted the administrative remedies available to him by statute. For these reasons, we will not now consider a collateral challenge to the 1995 deportation order.

## III. CONCLUSION

We conclude that the district court did not err by considering circumstantial evidence to conclude Appellant's misrepresentations or concealments were willful. Nor did the district court err by considering Appellant's habitual use of the name Rakeshkumar Patel outside the naturalization process to determine whether Appellant had misrepresented his name. Appellant may not collaterally attack the 1995 deportation order entered against him in this proceeding. In light of the foregoing, the judgment of the district court is affirmed.

_____