JUDGE BRIAN C. WIMES
Before the Court is Plaintiff's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). The Court, being duly advised of the premises, grants said motion.
On February 7, 2018, Plaintiff the United States of America ("the Government") filed the above-captioned action to revoke the naturalization of Defendant Mubarak Ahmed Hamed ("Hamed"). In the motion *868 before the Court, the Government seeks judgment on the pleadings on each of its four claims. (Doc. # 17). The Court heard argument on the motion on November 8, 2018. Each party appeared through counsel.
BACKGROUND
In 1990, Hamed, a native of Sudan, came to the United States to study under an F-1 student visa. In 1991, Hamed became the Executive Director of the Islamic American Relief Agency ("IARA"), which received funds from the U.S. Agency for International Development. As the IARA Executive Director, Hamed negotiated cooperation agreements and authorized financing.
At some point before October 1994, Hamed obtained an immigrant visa through the Diversity Immigrant Visa Program. On October 2, 1994, Hamed applied to the Immigration and Naturalization Service ("INS") to become a lawful permanent United States resident. INS approved the application on February 21, 1995.
On or about November 23, 1999, after having been a lawful permanent United States resident for five years, Hamed applied for naturalization. In his naturalization application, Hamed checked "no" in response to the question asking "[h]ave you ever knowingly committed any crime for which you have not been arrested?," and certified under penalty of perjury that the information provided in the naturalization application was true and correct. Hamed further asserted the same during his INS interview. INS approved Hamed's naturalization application on May 8, 2000.
Thereafter, Hamed received notice that he would take the oath of allegiance to the United States on July 21, 2000. The notice included a questionnaire requiring Hamed to again certify that he had not, after the date of his INS interview, "knowingly committed any crime or offense, for which [he had] not been arrested[.]" Additionally, Hamed again certified that his questionnaire responses were true and correct.
On July 21, 2000, Hamed attended his naturalization ceremony, took the oath of allegiance to the United States, was admitted to United States citizenship, and was issued Certificate of Naturalization No. 25738418.
On October 21, 2008, the Government filed a 41-count indictment against Hamed, charging him with violations of multiple federal criminal statutes in connection with Hamed's work for the IARA.
On June 25, 2010, Hamed pleaded guilty to three counts: (1) conspiracy to violate the International Emergency Economic Powers Act and the Iraqi Sanctions Regulations in violation of 18 U.S.C. § 371 and 50 U.S.C. §§ 1701 - 1706 ; (2) violation of the International Emergency Economic Powers Act and the Iraqi Sanctions Regulations in contravention of 50 U.S.C. §§ 1701 - 1706 ; and (3) corrupt endeavor to obstruct or impede the administration of Internal Revenue laws in violation of 26 U.S.C. § 7212(a). The remaining charges against Hamed were dismissed under the plea agreement. On January 12, 2012, the Court entered judgment against Hamed and sentenced him to a total sentence of 58 months in the custody of the United States Bureau of Prisons, with two years of supervised release to follow.
LEGAL STANDARDS
Fed. R. Civ. P. 12(c) provides that a party may seek judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings will be granted only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law."
*869 Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004) (citations omitted).
A motion under Fed. R. Civ. P. 12(c) is governed by the same standards as a motion under Fed. R. Civ. P. 12(b)(6) : "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009) (citing Ashley Cnty., Ark. v. Pfizer, 552 F.3d 659, 665 (8th Cir. 2009) ). Further, the court "views all facts pleaded by the nonmoving party as true and grants all reasonable inferences in favor of that party." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008). While the court's review is generally limited to the pleadings in this context, the court may properly consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).
With specific respect to a denaturalization proceeding, the Government bears the burden "to present clear, unequivocal, and convincing evidence that the citizenship was illegally procured." United States v. Al-Aqaili, 550 Fed. App'x 356, 357 (8th Cir. 2014) (citing United States v. Hansl, 439 F.3d 850, 853 (8th Cir. 2006) ). "Citizenship is illegally procured if an applicant failed to comply with the statutory requirements for naturalization." Id. (citing Fedorenko v. United States, 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981) ). "When the government succeeds in carrying this heavy burden, a district court must revoke citizenship on the ground that such order and certificate of naturalization were illegally procured." United States v. Jean-Baptiste, 395 F.3d 1190, 1192 (11th Cir. 2005) (citing 8 U.S.C. § 1451(a) ).
ANALYSIS
The Government alleges Hamed illegally procured naturalization by lack of good moral character through false statements, through crimes of moral turpitude, and through lack of good moral character. (Counts I, II, III). The Government also alleges Hamed improperly procured citizenship through concealment or willful misrepresentation (Count IV).
The issue is whether, based on the current record with all reasonable factual inferences drawn in Hamed's favor, the Government has presented clear, unequivocal, and convincing evidence, with respect to any of the four claims alleged, that Hamed's United States citizenship should be revoked as "illegally procured or [as] procured by concealment of a material fact or by willful misrepresentation." United States v. Nguyen, 829 F.3d 907, 916 (8th Cir. 2016) (citing 8 U.S.C. § 1451(a) ).
A. HAMED'S NATURALIZATION WAS ILLEGALLY PROCURED.
Illegal procurement arises when an individual "was statutorily ineligible for naturalization" because he or she does not meet the congressionally imposed requirements for citizenship. United States v. Rubalcava Gonzales, 179 F.Supp.3d 917, 922 (E.D. Mo. 2016) (citing Fedorenko, 449 U.S. at 506, 101 S.Ct. 737 ). One of these requirements is "good moral character" during the "statutory period," which spans from five years before a prospective citizen files his or her application for naturalization until the prospective citizen takes the oath of citizenship. Id.; 8 U.S.C. § 1427(a)(3) ; 8 C.F.R. § 316.10(a)(1).
The determination of good moral character is assessed "on a case-by-case basis" that is guided by a non-exhaustive list of "certain actions or characteristics that preclude persons from establishing good moral *870 character ...." and "the standards of the average citizen in the community of residence." Rubalcava Gonzales, 179 F.Supp.3d at 922 (citing 8 U.S.C. § 1101(f)(1)-(9) ; 8 C.F.R. § 316.10(a)(2) ).
Additionally, an individual is considered to "lack[ ] good moral character and is ineligible for naturalization if he is convicted of or admits the commission of one or more crimes involving moral turpitude during the statutory period, even if the person was never charged, arrested or convicted." Id. (citing 8 C.F.R. § 316.10(b)(2)(iv) ).
Hamed applied for naturalization on November 23, 1999, and took the oath of citizenship on July 21, 2000. Therefore, the statutory period for good character in this case is from November 23, 1994 through July 21, 2000. Though Hamed's date of conviction falls outside the statutory period, he pleaded guilty to violating § 7212(a)"for each year 1997 through 2003," such that Hamed has admitted to committing a crime during the statutory period.
1. HAMED IS COLLATERALLY ESTOPPED FROM DENYING CRIMINAL CONDUCT.
The Government first asserts Hamed is collaterally estopped from denying his criminal conduct. While the Court agrees with Hamed's assertion that this denaturalization action is not identical to the previous criminal action, the Eighth Circuit has found that in the course of a denaturalization proceeding, a defendant is collaterally estopped from "relitigating the issue of whether he knew his conduct was illegal." Al-Aqaili, 550 Fed. App'x at 358 (citing Jean-Baptiste, 395 F.3d at 1194 ; United States v. Akamo, 515 Fed. App'x 248, 249 (5th Cir. 2012) ; United States v. Suarez, 664 F.3d 655, 663 (7th Cir. 2011) ). The Court thus considers the merits of the Government's motion for judgment on the pleading in light of the finding that Hamed knowingly violated § 7212(a) during the statutory period for good moral character.
2. HAMED'S NATURALIZATION WAS ILLEGALLY PROCURED BASED ON CONDUCT INVOLVING A CRIME OF MORAL TURPITUDE.
The Government argues Hamed's naturalization is illegally procured because he has admitted violation of 26 U.S.C. § 7212(a), a crime of moral turpitude, during the statutory period for good moral behavior. In opposition, Hamed does not dispute that he pleaded guilty to violation of § 7212(a) during the statutory period; however, Hamed disputes that violation of § 7212(a) is a crime of moral turpitude.
"Congress has not defined the phrase 'crime involving moral turpitude,' and the meaning of the phrase was left 'to future administrative and judicial interpretation.' " Godinez-Arroyo v. Mukasey, 540 F.3d 848, 849-50 (8th Cir. 2008). The Eighth Circuit has "defined a crime of moral turpitude as involving an act of baseness, vileness, or depravity in the private and social duties that people owe each other in society in general, and is contrary to the accepted rule of right and duty." Id. (citing Franklin v. I.N.S., 72 F.3d 571, 573 (8th Cir. 1995) ). "A vicious or corrupt mind has always been '[a]mong the tests to determine if a crime involves moral turpitude.' " Estrada-Rodriguez v. Lynch, 825 F.3d 397, 405 (8th Cir. 2016) (citing In re Ajami, 22 I. & N. Dec. 949, 950 (B.I.A. July 13, 1999) (citations omitted).
To determine whether a conviction involves moral turpitude, courts should "look to the statutory language of the crime [of conviction], not the underlying facts." Hernandez-Perez v. Holder, 569 F.3d 345, 348 (8th Cir. 2009). "Critical to a finding of moral turpitude is the intent required by the statute under which the petitioner was convicted." Id. (citing *871 Reyes-Morales v. Gonzales, 435 F.3d 937, 945 (8th Cir. 2006).
The statutory language of § 7212(a) is as follows:
(a) Corrupt or forcible interference. --Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $ 5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $ 3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.
26 U.S.C. § 7212(a). This statute contains three elements: "(1) in any way corruptly (2) endeavoring (3) to obstruct or impede the due administration of the Internal Revenue Code." United States v. Williams, 644 F.2d 696, 699 (8th Cir. 1981), rev'd on other grounds, United States v. Brooks, 174 F.3d 950, 956 (8th Cir. 1999).
The language of the statute of conviction requires a corrupt state of mind. 26 U.S.C. § 7212(a). Additionally, compliance with the Internal Revenue Code would seemingly fall within the "the accepted rule of right and duty," such that, in the Court's view, endeavoring to obstruct it could reasonably be considered contrary to that rule of right and duty. Estrada-Rodriguez, 825 F.3d at 405. Consequently, the Court is inclined to find that Hamed's conviction under § 7212(a), involving a corrupt endeavor to impede operation of the Internal Revenue Code is a crime of moral turpitude.
Hamed asserts his conviction under § 7212(a) is only a crime of moral turpitude if the least culpable conduct under which a person might be convicted under § 7212(a) is a crime of moral turpitude. Hamed argues a conviction under § 7212(a) may arise from a state of mind "that does not necessarily involve evil intent, such as intent to defraud," such that violation of § 7212(a) should not be considered a crime of moral turpitude. Hirsch v. I.N.S., 308 F.2d 562, 567 (9th Cir. 1962).
While Hamed's argument is well-taken, the lack of binding authority to support Hamed's assertions, the language of the statute, and the underlying facts of the guilty plea (which Hamed is collaterally estopped from disputing) suggest § 7212 is properly considered a crime of moral turpitude.
Hamed was convicted of violating § 7212(a) on January 12, 2012. Hamed submitted his naturalization application on November 23, 1999, such that the five-year statutory period for good moral character began on November 23, 1994, and ended on the date Hamed took the oath of citizenship on July 21, 2000. Therefore, Hamed was convicted of a crime of moral turpitude outside the statutory period for good moral character.
Notwithstanding, however, an individual who commits a crime of moral turpitude during the statutory period, "even if the person was never charged, arrested, or convicted," is ineligible for naturalization. 8 C.F.R. § 316.10(b)(2)(iv).
Hamed pleaded guilty to violating § 7212(a) on June 25, 2010. As part of the plea agreement, Hamed admitted to "[f]or *872 each year 1997 through 2003, Hamed filed or caused to be filed IRS Forms 990, Return of Organization Exempt from Income Tax ...," among other conduct in violation of § 7212(a). Thus, Hamed admittedly committed acts during the statutory period that rendered him ineligible for naturalization. Therefore, the Court finds Hamed's citizenship illegally procured based on conduct involving a crime of moral turpitude during the statutory period.
3. HAMED'S NATURALIZATION WAS ILLEGALLY PROCURED BASED ON ADMITTED UNLAWFUL ACTS DURING THE STATUTORY PERIOD FOR GOOD MORAL CHARACTER.
The Government argues even if violation of § 7212(a) is not a crime of moral turpitude, it is entitled to judgment as a matter of law because Hamed was ineligible for naturalization under the "catch-all" provision for good moral character. Hamed counters that whether he is or was during the statutory provision of good moral character is a question of fact that cannot be resolved on the pleadings.
Title 8 U.S.C. § 1101(f)(1)-(9) sets forth categories of prospective citizens that "shall [not] be regarded as, or found to be, a person of good moral character ...." The categories listed are followed by the catch-all provision, stating "[t]he fact that any other person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f).
The regulations relating to a finding of "good moral character" are set forth in 8 C.F.R. § 316.10. Sections 316.10(b)(1) and (2) sets forth specific circumstances under which an applicant for naturalization is considered to lack good moral character. Section 316.10(b)(3) sets forth a broader range of circumstances in which "the applicant shall be found to lack good moral character":
Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant ... Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).
8 C.F.R. § 316.10(b)(3)(iii).
In this case, as discussed above, Hamed admittedly engaged in illegal conduct during the statutory period. The unlawful conduct at issue, in addition to violation of § 7212(2), is conspiracy to violate, and violation of, the International Emergency Economic Powers Act and the Iraqi Sanctions Regulations, 18 U.S.C. § 371 and 50 U.S.C. §§ 1701 - 1706. Under the plea agreement, Hamed, in connection with IARA, "was aware of and caused IARA to raise money for transfer to persons in Iraq," in violation of Iraqi Sanctions Regulation, 31 C.F.R. § 575 which prohibited a United States person from sending or transferring money, funds, and goods, directly or indirectly, to any person in Iraq. (Doc. # 521). Further, the plea agreement states Hamed's admissions that, among other acts, "he corruptly endeavored to impair and impede the due administration of the Internal Revenue laws by using IARA's tax-exempt status to solicit funds ... [and] accepted monetary contributions specifically designated for projects in Iraq ...." (Doc. # 521).
The Eighth Circuit has found that "a crime in which fraud is an ingredient adversely reflect[s] upon the applicant's moral character." Al-Aqaili, 550 Fed. App'x at 357 (citing Izedonmwen v. I.N.S., 37 F.3d 416, 417 (8th Cir. 1994) ; ( 8 C.F.R. § 316.10(b)(2)(i) ) ).
*873 The factual predicate underlying Hamed's admitted criminal convictions involves the use of "funds received as charitable contributions to engage in the prohibited transactions involving Iraq ...." In Al-Aqaili, the Eighth Circuit found the defendant's guilty plea to the knowing commission of mail fraud "without question contains the element of fraud and, thus, is a crime involving moral turpitude ...." 550 Fed. App'x at 358. In the Court's view, Hamed's conduct in soliciting funds on behalf a not-for-profit, for projects in contravention of IIEPA and Iraqi sanction regulations, could be reasonably characterized as fraud on donors to the IARA. Further, the illegal conduct at issue was undertaken knowingly. Thus, the Court concludes the Government has demonstrated that Hamed engaged in unlawful acts during the statutory period.
Section 316.10(b)(3)(iii) states that an applicant shall be found to lack good moral character if he or she engaged in unlawful acts, "[u]nless the applicant establishes extenuating circumstances ...." 8 C.F.R. § 316.10(b)(3). Hamed argues the record contains a list of positive factors that demonstrate good moral character, including Hamed's advanced degrees, his long employment history in organizations dedicated to charitable causes, and personal contributions to schools, medical centers, and refugee camps. Even if each of these assertions are supported in the record, they are not extenuating circumstances of the type that might outweigh Hamed's admitted criminal conduct involving purposeful fraudulent and/or corrupt acts. Therefore, the Court finds Hamed's naturalization illegally procured based on unlawful acts adversely reflecting upon his moral character.
For all of these reasons, the Court finds the Government entitled to judgment under Fed. R. Civ. P. 12(c) based on illegal procurement of naturalization.
B. HAMED'S NATURALIZATION AND/OR CITIZENSHIP WAS ILLEGALLY PROCURED BASED ON FALSE STATEMENTS AND/OR WILLFUL CONCEALMENT.
The Government argues Hamed's naturalization is subject to revocation because Hamed provided willful misrepresentations to INS during the naturalization process. Hamed counters that he did not know until 2008 that he had engaged in criminal conduct for which he had not been charged during the naturalization process.
There are four requirements for revoking naturalization because of willful misrepresentation: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured his citizenship as a result of the misrepresentation or concealment. United States v. Hirani, 824 F.3d 741, 748 (8th Cir. 2016).
In this case, the Government asserts Hamed represented through the naturalization process that he had not committed a crime for which he had not been arrested. Further, the Government asserts Hamed's guilty plea establishes he "knowingly and willingly" committed the crimes to which he pleaded guilty. The Government asserts the misrepresentation that Hamed had not engaged in any criminal conduct for which he had not been arrested was material to the naturalization process because had Hamed admitted the criminal conduct, his naturalization application would not have been approved since it would render Hamed statutorily ineligible for naturalization. Finally, the Government asserts Hamed procured naturalization as a result of the misrepresentation *874 that he had not engaged in criminal conduct for which he had not been arrested.
With respect to the first element, Hamed engaged in criminal conduct for which he had not been charged or convicted during the statutory period, as discussed above. Therefore, Hamed misrepresented or concealed some fact.
With respect to the second element, the misrepresentation is considered willful because Hamed affirmed, under penalty of perjury, that the facts to which he was attesting to were true representations. Id. at 749. The issue of willfulness asks whether the "misrepresentation or concealment was deliberate and voluntary"; there is no requirement for the government to prove an intent to deceive. Id. (citing Espinoza-Espinoza v. I.N.S., 554 F.2d 921, 925-26 (9th Cir. 1977) ). Moreover, to the extent Hamed argues he did not know the conduct was illegal at the time it occurred, this argument is collaterally estopped. Al-Aqaili, 550 Fed. App'x at 357.
Finally, with respect to the third and fourth elements, the Court has determined above that the conduct in which Hamed was engaged during the statutory period was a crime of moral turpitude, or at least unlawful conduct informing a lack of good moral character. Either characterization renders Hamed ineligible for naturalization. Consequently, Hamed's willful misrepresentation that he had not engaged in criminal conduct during the statutory period for which he had not been charged or convicted was material because had he disclosed such conduct, he would have been ineligible for naturalization.
For all of these reasons, the Court finds the Government entitled to judgment under Fed. R. Civ. P. 12(c) based on willful misrepresentation or concealment.
C. LACHES IS INAPPLICABLE.
The Government argues Hamed's affirmative defense of laches is inapplicable to this denaturalization proceeding. Hamed argues laches is a suitable equitable defense that, because its analysis is fact-specific, should preclude judgment on the pleadings at this stage.
"It has been consistently held in the lower courts that delay which might support a defense of laches in ordinary equitable proceedings between private litigants will not bar a denaturalization proceeding brought by the Government. These cases have applied the principle that laches is not a defense against the sovereign." Costello v. United States, 365 U.S. 265, 281, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (collecting cases).
Notwithstanding, the Court is satisfied that the current record precludes application of a laches defense under the circumstances. To establish a laches defense, Hamed must prove: (1) a lack of diligence by the Government; and (2) prejudice. Id. While certainly Hamed can establish the element of prejudice, he cannot establish lack of diligence in this case. Hamed admitted criminal conduct in 2010 and the Government filed this denaturalization proceeding in 2018. This eight-year delay does not give rise to a viable laches defense. Id. at 288, 81 S.Ct. 534 (revocation after 27 years) ; Kungys v. United States, 485 U.S. 759, 764, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (revocation after 28 years); Accordingly, it is hereby
ORDERED the United States' Motion for Judgment on the Pleadings (Doc. # 17) is GRANTED. Judgment is thus entered in favor of the Government and against Hamed, thus revoking Hamed's naturalization. Hamed's Certificate of Naturalization is canceled.
IT IS SO ORDERED.